## FRYE v. FRYE, JR., ET AL.

*Wills—Mental capacity—Disinheriting child as proof—Charge to jury—Undue influence.*

1. The mere disinheriting of one of testator's children is not an act, which, standing alone, may be considered by the jury as indicating any unsoundness of mind or inability on the part of the testator to make a will.

2. While a statement in a charge to the jury in a will contest case, that the contestant must prove by a preponderance of the evidence that undue influence was used by *all* of the defendants, naming them, is in itself erroneous, but when taken in consideration with the whole charge on the subject of what constitutes undue influence and what proof is necessary to support such a claim it is fully and properly explained to the jury, such error is not ground for reversal.

(Decided December 18, 1922.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Otto Pfleger,* for plaintiff in error.
*Mr. Wm. A. Geoghegan* and *Mr. Frank R. Gusweiler,* for defendants in error.

MIDDLETON, J. (of the Fourth Appellate District, sitting in place of CUSHING, J.). This is a proceeding to reverse a judgment of the court of common pleas sustaining the validity of the last

will and testament of one William Frye, Sr. The will was contested by the cross-petition of Charles Frye, a son, who originally was a defendant in the action, and who was disinherited by his father in the will. The testator left another son, named William, and two daughters, Bertha Stroup and Emma B'Hymer. He divided his estate in a fairly equitable way among these three remaining children. The record discloses that for several years prior to the execution of this will there was a complete estrangement between Charles Frye and his father. It appears that in three prior wills made by the testator this son was cut out of any participation in the father's estate. It is unnecessary to review the evidence in detail on this phase of the case. It is sufficient to say that the record shows abundant reasons to justify the father in his action in disinheriting Charles.

The petition in error in this proceeding, and the briefs filed in support thereof, complain mainly of the misconduct of opposing counsel and of the court in the trial of the case below. However, we cannot say, in view of the overwhelming weight of the evidence adduced in favor of the validity of this will, that such misconduct affected the result or was so prejudicial as to require a reversal of the judgment herein. In reaching this conclusion attention is directed to the case of *Palmer* v. *Peak*, 104 Ohio St., 603, decided January 10, 1922. We regard that case as directly in point and controlling here.

It is further contended that the court erred in its general charge to the jury and also in refusing to give certain special instructions requested by the contestant before argument. The instructions

so refused were numbered three and four. It is
sufficient to say as to instruction number three
that it is purely argumentative and was properly
refused. Instruction number four presents a more
serious question. It is as follows:

"The mere fact that his son Charles was disin-
herited is a circumstance (unless properly ex-
plained) to be considered on the question of un-
soundness of mind and inability to make a valid
will."

It is a well-understood principle of law that any
unnatural act of the testator in the making of his
will is a circumstance which may be considered by
the jury in connection with other facts in deter-
mining the validity of the will. We are not pre-
pared to say, however, that the mere disinheriting
of a child is an act, which, standing alone, may be
considered by the jury as indicating even in the
slightest degree any unsoundness of mind or in-
ability to make a will. The true rule in this re-
spect is well stated in the editorial notes found in
13 Ann. Cases, 1044, as follows:

"It is a well established rule that an unnatural
or unjust disposition made of a testator's estate,
though it does not affect the validity of his will,
is evidence tending to throw light on his testa-
mentary capacity."

This is supported by many cases cited. The edi-
tor then says:

"Though it has been held that the disinher-
itance of the testator's children is *prima facie* an
unnatural and unreasonable act  *  *  *  it seems
from the decisions cited under the general rule
that in the absence of facts indicating a want of
motive for a particular disposition, it cannot be

said that such disposition is unnatural or unjust.
For the purpose of determining whether the dis-
position is in fact unnatural or unjust, the rela-
tions which existed between the testator on the
one hand and the persons disinherited and the
legatees on the other should be considered.''

Many authorities are here cited. The editor
further says:

"Accordingly the decisions are to the effect that
it is only when there is other evidence of mental
incapacity that an unnatural and unjust disposi-
tion is a circumstance which, taken in connection
with such other evidence, may tend to show tes-
tamentary incapacity.''

The charge, therefore, should have connected
the act of disinheriting Charles with other acts
tending to prove unsoundness of mind or inabil-
ity to make a will, and the jury should have been
instructed that it could be considered only in con-
nection with such other acts.

The court in its general charge to the jury
said (Record, page 789):

"The burden of proof is, as I have charged
you, upon the cross petitioner to prove by a pre-
ponderance of the evidence that undue influence
was used by the defendants and thereby caused
William Frye to make the will in question—I
should say by the defendants named in the an-
swer and cross petition, to-wit: William Frye, Jr.,
Emma B'Hymer, Wayne B'Hymer—and thereby
caused William Frye to make the will in question.''

It is urged that by this instruction the court
limited and confined the jury in their considera-
tion of the charge of undue influence strictly to
the allegations in the cross-petition, and that the

jury must have understood from this charge that the burden was on the cross-petitioner to prove undue influence by *all* of the defendants named. While this instruction may be susceptible of such construction, and if it stood alone, and was the only instruction given to the jury on this phase of the case, might be said to be prejudicial, we think, when the whole charge of the court on this subject is considered, that it could not have had the effect claimed. The charge as a whole fully and properly explained to the jury what constituted undue influence and what proof was necessary to support a claim of undue influence. For instance, on page 7 of the general charge, we find this instruction:

"In order to make a valid will the testator must be a free agent, and be at liberty to carry out his own wishes and desires; and any restraint brought to bear upon the testator, which he has not the strength of mind or will to resist, if exerted so as to coerce him against his desire and purpose into the making of a will or its provisions, is undue influence within the meaning of the law.

"In order to avoid a will on the ground of undue influence, it must be made to appear by the evidence that it or its provisions were obtained by means of influence amounting to moral coercion destroying free agency, or by importunity which could not be resisted, so that the testator was constrained to do that which was against his actual will and which influence he was unable to withstand or too weak to resist. The exercise of undue influence need not be shown by direct proof;

it may be shown from circumstances, but these cir-
cumstances must be shown by the evidence and
be such as to justly lead to the inference that un-
due influence was employed, and the will was not
the wish or intention of the testator.''

Again, on page 6, the court said to the jury:

''A person may be suffering to some extent from
weakness or bodily infirmity, yet such circumstan-
ces would not alone render him incapable of dis-
posing of his property by will as he saw fit, pro-
vided such weakness or infirmity has not caused
him to be of unsound mind or he did not act under
the undue influence of others.''

In other portions of the charge the jury were
instructed in respect to undue influence without
any limitation being made as to the parties by
whom such undue influence was exerted. By rea-
son of these instructions, and from the further
fact that no more than a scintilla of evidence of
undue influence, if that much, is shown by this rec-
ord, we are unable to conclude that the instruction
complained of worked any injury to the contestant.
It was proper, as far as it went, and if the con-
testant desired it to be more specific a request
to that effect should have been made.

The usual complaints are found regarding the
admission and rejection of evidence. After a care-
ful consideration of the whole record we are con-
strained to hold that no evidence was excluded
or admitted that prejudicially affected the rights
of the contestant.

In view of these considerations the judgment of
the court of common pleas is affirmed.

The entry of affirmance may show that this court

determines and certifies that in its opinion substantial justice has been done to the plaintiff in error, as shown by the record herein.

*Judgment affirmed.*

HAMILTON, P. J., and BUCHWALTER, J., concur.